OPINION
{¶ 1} Appellant, Nestor A. Stychno, appeals the judgment entered by the Trumbull County Court of Common Pleas. The trial court entered judgment in favor of appellee, Margaret M. Stychno.
 {¶ 2} As noted by both parties in their briefs and by the trial court, this case has a lengthy history. The original compliant for divorce was filed in July 1987. Since then, there have been numerous motions, hearings, and appeals. A more complete history of the action is set forth in this court's most recent opinion.[1]
 {¶ 3} In our 1998 opinion, due to the excessive time consumption of this case, this court took it upon itself to calculate the value of the remaining marital assets and enter judgment. This court entered judgment in favor of appellee for $328,761.[2] Of this judgment, $176,370 was for past due support, and the remainder was unpaid equity as a result of the division of the marital assets.[3]
 {¶ 4} The parties were married for twenty years prior to these proceedings. The marriage produced four children. Appellant is a doctor and has worked as a chiropractor in the Warren area for thirty-four years. Appellant has been remarried for more than ten years, and his current wife earns a "six-figure" income at her job in Michigan. Appellant and his new wife live in a $400,000 home in Michigan. They also have a condominium in Florida.
 {¶ 5} Appellant testified that there is a corporation, "IMM," that runs his medical office. His current wife is the president and CEO of the corporation. His wife is paid a salary for running this corporation. Appellant testified that IMM is responsible for paying the bills of his office, including payroll. The earnings of the office go into this company, and he gets what is left over after expenses. He has earned from $70,000 to over $100,000 per year from 1996 to 2001. He testified that he personally, not IMM, pays his son, also a chiropractor, a salary of $104,000. Appellant drives a Rolls Royce automobile, which is paid for by IMM.
 {¶ 6} In 1998, appellant was involved in a car accident in Pennsylvania. Following the accident, he was treated and released from an emergency room in Warren. He claims that his work hours have been limited due to medical problems resulting from this accident. He testified that he commutes from Michigan and works two-and-one-half days a week, every other week.
 {¶ 7} The trial court found that appellant's failure to pay support from 1996 through 2001 and his failure to pay the past due support ordered by this court in the 1998 opinion were willful. The trial court then assessed statutory interest, pursuant to R.C. 3123.17. The trial court also found that some of the money this court ordered appellant to pay appellee in the 1998 opinion had been discharged because of appellant's bankruptcy action.
 {¶ 8} Much of appellee's brief is dedicated to arguing that appellant never filed a proper transcript with this court. After appellee's brief was filed, appellant moved this court to supplement the record. This court granted appellant's request to supplement the record, and appellant filed a transcript of the December 12, 2001 hearing. After the record was supplemented, appellee has not moved this court to file a corrected or amended brief. Therefore, we will decide this appeal on the current record before us, including the amended portion, and the briefs of the parties as they were originally filed.
 {¶ 9} Appellant raises four assignments of error on appeal. We will address these assignments of error out of order. Appellant's first and fourth assignments of error are:
 {¶ 10} "[1.] The trial court erred and abused its discretion in interpreting this Court's August 14, 1998 Opinion as a remand.
 {¶ 11} "[4.] The trial court erred when it amended this Court's August 14, 1998 Decision."
 {¶ 12} A reviewing court reviews a trial court's decision on a civil contempt order on an abuse of discretion standard.[4] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[5]
 {¶ 13} The trial court did refer to the current proceeding as a "remand." However, through the course of the proceeding the action before the court became threefold. First, the court determined arrearages owed by appellant to appellee from 1996 to 2001, the time period subsequent to the period addressed by this court's 1998 opinion. During this hearing, evidence was provided that appellant had filed a bankruptcy action. This bankruptcy matter discharged some of appellant's debt that was owed to appellee pursuant to this court's August 1998 opinion. Finally, the court assessed interest on the arrearages prior to 1996, which were included in this court's 1998 opinion, and the arrearages from 1996 through 2001.
 {¶ 14} In its last opinion, this court envisioned the possibility of additional proceedings at the trial court level. Specifically, the following language was included in the opinion, "[i]f the parties hereafter bring the matter of arrearages accumulated after June 18, 1996, before the trial court * * *."[6] Any arrearages that were accrued between June 18, 1996 and 2001 were before the trial court for the first time. This is because the record before this court when it issued its 1998 opinion ended in June 1996. Likewise, the trial court's decision to assess interest in the arrearages from 1996 to 2001, pursuant to R.C. 3123.17, was within its discretion, as this issue was not previously before this court.
 {¶ 15} Appellant's bankruptcy became final subsequent to this court's 1998 opinion. The result of the bankruptcy adjudication was that certain debts appellant owed to appellee as a result of this court's 1998 opinion were discharged. Specifically discharged were appellants obligations to pay appellee: (1) $79,891 for marital residence equity; (2) $51,500 for half interest in a boat; and (3) $21,000 for half interest in stock. The past due support in the amount of $176,370 was not discharged.
 {¶ 16} Finally, the trial court found that appellant's failure to pay the $176,370 in past due support ordered by this court in its 1998 opinion was willful. In this court's 1998 opinion, it chose to address and meticulously calculate appellant's arrearages, due to the trial court's prior failure to do so.[7] This court then entered judgment, ordering appellant to pay $176,370 in past due support. Appellant has not paid this amount. The trial court found appellant's failure to pay was willful, pursuant to R.C. 3123.17. Appellant claims that, since this court did not assess interest to this amount, the trial court was precluded from doing so. We disagree. This court entered judgment in favor of appellee and ordered that the money be paid within thirty days. The money was not paid. The trial court found this failure to be willful and, thus, assessed interest.
 {¶ 17} Even though the trial court found that appellant's failure to pay the 1998 judgment entered by this court was willful, such a finding was not necessary. R.C. 1343.03 provides for statutory interest to the obligee, at a rate of ten percent per annum, if a judgment becomes due and is not paid. This section does not require a finding that the failure to pay was willful.[8] Although R.C. 1343.03 does not specifically mention judgments in domestic relations cases, the Supreme Court of Ohio has affirmed a trial court's imposition of interest on a lump-sum judgment in a domestic relations case.[9] In the case sub judice, the lump-sum judgment for past due support became due thirty days after the announcement of this court's decision, in September 1998. Appellant has not paid this judgment. Thus, the trial court could have assessed interest pursuant to R.C. 1343.03.
 {¶ 18} Appellee is correct in noting that the trial court used the word "amend" when referring to this court's 1998 opinion. As previously noted, this court was performing a task usually completed by the trial court, i.e., calculating arrearages. Accordingly, this court's judgment in favor of appellee had the effect of a trial court judgment entry. While the trial court used the word "amend," the trial court's actions did not change the prior holding of this court. The trial court merely noted that certain parts of the judgment entered by this court had been discharged by the bankruptcy proceeding. Next, the trial court assessed interest on the past due support. Finally, the trial court issued a new order with the total of $328,175.69 due, to reflect these changes.
 {¶ 19} The trial court did not abuse its discretion by addressing the matters contained in its judgment entry. Appellant's first and fourth assignments of error are without merit.
 {¶ 20} Appellant's second and third assignments of error are:
 {¶ 21} "[2.] There was insufficient evidence to prove that Plaintiff-Appellant's failure to pay support arrearages was `willful'.
 {¶ 22} "[3.] The trial court erred and abused its discretion in finding that Plaintiff-Appellant's failure to pay support arrearages was `willful'."
 {¶ 23} As both appellant's second and third assignments of error allege that the trial court should not have determined that his failure to pay support arrearages was willful, we will address them together.
 {¶ 24} R.C. 3123.17 states, in part:
 {¶ 25} "(A) When a court issues or modifies a court support order, the court shall determine the following:
 {¶ 26} "(1) Whether the obligor is in default under a prior court support order or the court support order being modified;
 {¶ 27} "(2) if the obligor is in default, the date the court support order went into default and the amount of support arrearages owed pursuant to the default.
 {¶ 28} "If the court determines the obligor is in default under a support order, the court shall issue a new order requiring the obligor to pay support. If the court determines the default was willful, the court may assess interest on the arrearage amount from the date the court specifies as the date of default to the date the court issues the new order requiring the payment of support and, if interest is assessed, shall compute the interest at the rate specified in section 1343.03 of the Revised Code. The court shall specify in the support order the amount of interest the court assessed against the obligor, if any, and incorporate the amount of interest into the monthly payment plan."
 {¶ 29} The term "willful" is not defined in the Revised Code in the context of R.C. 3123.17, thus, it will be given its ordinary meaning.[10] The common definition of willful is "1. [b]eing in accordance with one's will; deliberate. 2. Inclined to impose one's will; unreasoningly obstinate."[11] Appellant cites the New World American Dictionary, Second College Edition, which, according to appellant, defines willful as "`said or done deliberately or intentionally; doing as one pleases.'" For the following reasons, the trial court did not err by finding that appellant's failure to pay was willful, as his conduct meets both of the above definitions for willful.
 {¶ 30} In its judgment entry, the trial court noted several factors it considered when determining that appellant's conduct was willful. Appellant is a licensed chiropractor with thirty-four years of experience. He has had an income of $70,000 to over $100,000 per year. He pays his son a discretionary income of $104,000 per year. The trial court notes that appellant's current wife has a six-figure income and that she owns a home worth approximately $400,000 in Michigan and a condominium in Florida. Finally, appellant's wife runs IMM, the corporation that runs appellant's medical practice. In addition, his wife is paid a significant salary for running this corporation.
 {¶ 31} Appellant argues that although he and his wife may possess the above assets and make certain salaries, the issue was not whether appellant "could pay support, or had the means to pay support, or whether he even wanted to pay support, but whether his non-payment was willful or not." (Emphasis sic.) We agree that the ultimate issue was whether appellant's non-payment was willful. However, having the ability to pay the support is a substantial factor in this determination. The trial court found that appellant possessed sufficient assets to make the support payments. In addition, appellant's testimony at the December 12, 2001 hearing indicates he was aware of the support obligation, as well as this court's 1998 opinion. Since appellant had the ability to pay support and was aware that he had to pay support, his refusal to pay was deliberate. Using the definition set forth in appellant's brief; appellant was "doing as he pleased." Accordingly, appellant's failure to pay was willful.
 {¶ 32} Appellant argued that he is disabled as a result of the 1998 car accident and this has affected his earning potential. However, the trial court noted that appellant's income was not substantially reduced for 1998. In addition, appellant testified that he works only two-and-one-half days every other week. He commutes from his Michigan residence. This is one factor the trial court relied on in finding that appellant's reduction in work hours was not solely a result of his injuries sustained in the car accident.
 {¶ 33} The complaint for divorce in this case was filed in 1987. For the past sixteen years, the parties have gone through their fair share of legal proceedings. Numerous attorneys and judges have worked on this matter. Eight hundred eighty-three documents have been filed in this action. Since the beginning of this case, appellant has been ordered to pay child and/or spousal support; a task that appellant has seldom performed on a consistent basis, even though he continues to enjoy a lavish lifestyle. We cannot imagine a more appropriate case for a court to assess interest, pursuant to R.C. 3123.17, for the willful nonpayment of a support order. Five years ago, in an effort to conclude this long overdue matter, this court calculated the past due arrearages owed by appellant. He has failed to pay this amount and has subsequently failed to remain current with his support payments.
 {¶ 34} A review of the transcript of the December 12, 2001 hearing, including portions of which the trial court relied on, reveals there was sufficient evidence to support the trial court's finding that appellant's failure to pay support was willful. In addition, the trial court did not abuse its discretion by finding that appellant's failure to pay support was willful.
 {¶ 35} Appellant's second and third assignments of error are without merit.
 {¶ 36} The judgment of the trial court is affirmed.
Judgment affirmed.
VUKOVICH and DONOFRIO, JJ., concur.
JOSEPH J. VUKOVICH, J., Seventh Appellate District, sitting by assignment.
GENE DONOFRIO, J. Seventh Appellate District, sitting by assignment.
[1] Stychno v. Stychno (Aug. 14, 1998), 11th Dist. Nos. 97-T-0003 and 96-T-5620, 1998 Ohio App. LEXIS 3749.
[2] Id. at *17.
[3] Id.
[4] (Citations omitted.) Strong v. Strong, 6th Dist. No. L-01-1464,2002-Ohio-2693, at ¶ 26.
[5] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[6] Stychno v. Stychno, 1998 Ohio App. LEXIS 3749, at *16.
[7] Id. at *14.
[8] See Warner v. Warner (Feb. 27, 1998), 6th Dist. No. WD-97-095, 1998 Ohio App. LEXIS 721, at *7.
[9] Dunbar v. Dunbar (1994), 68 Ohio St.3d 369.
[10] Gentry v. Jentry (Apr. 10, 2002), 9th Dist. No. 01CA0042, 2002 Ohio App. LEXIS 1580, at *3.
[11] The American Heritage Dictionary, Second College Edition (1991) 1382.